IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| MISTY L. BROWN, ) | Civil Action No. 3:10-692-JFA-JRM |
| ) | |
| Plaintiff, ) | |
| ) | |
| v.  ) | **REPORT AND RECOMMENDATION** |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| COMMISSIONER OF SOCIAL SECURITY ) | |
| ) | |
| Defendant. ) | |
| ) | |

This case is before the Court pursuant to Local Civil Rules 73.02(B)(2)(a) and 83.VII.02, et seq., DSC, concerning the disposition of Social Security cases in this District. Plaintiff brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), to obtain judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI").

## **ADMINISTRATIVE PROCEEDINGS**

Plaintiff applied for DIB and SSI on July 11, 2007, alleging disability as of May 18, 2007.[1] Plaintiff's applications were denied initially and on reconsideration, and she requested a hearing before an administrative law judge ("ALJ"). After a hearing held June 23, 2009, at which Plaintiff appeared and testified, the ALJ issued a decision dated August 11, 2009, denying benefits and finding that Plaintiff was not disabled. The ALJ, after hearing the testimony of a vocational expert ("VE"), concluded that work exists in the national economy which Plaintiff could perform.

Plaintiff was thirty-seven years old at the time she alleges she became disabled and forty years old at the time of the ALJ's decision. She has a high school education with training as a

---

[1]Plaintiff subsequently amended the alleged onset date to May 16, 2007. (Tr. 12).

certified nursing assistant with past relevant work as a nursing assistant and radiator assembler . (Tr. 31, 60). Plaintiff alleges disability due to status-post left acetabular fracture with resulting posttraumatic degenerative joint disease of the left hip, degenerative joint disease of the knees bilaterally, degenerative disc disease of the lumbar spine, reactive airway disease/asthma, obesity, and mood disorder. (Tr. 14-15).

The ALJ found (Tr. 14-25):

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2012.

2. The claimant has not engaged in substantial gainful activity since May 16, 2007, the amended alleged onset date (20 CFR 404.1571 *et. seq.*, and 416.971 *et. seq.*).

3. The claimant has the following severe combination of impairments: status-post left acetabular fracture with resulting posttraumatic degenerative joint disease of the left hip, degenerative joint disease of the knees bilaterally, degenerative disc disease of the lumbar spine, reactive airway disease/asthma, obesity, and mood disorder (20 CFR  404.l520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1525, 404.1526,  416.925 and 416.926).

5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) with certain additional limitations. Specifically, I find that the claimant can lift and/or carry 20 pounds occasionally and 10 pounds frequently. I further find that the claimant can sit for approximately 6 hours and stand/walk for approximately 6 hours out of an 8-hour work day. I find that the claimant is limited to occasional stooping, kneeling, crouching, crawling, and climbing of ramps, stairs, ladders, ropes and scaffolds. I find that the claimant can frequently balance. I find that the claimant must avoid concentrated exposure to environmental irritants, such as fumes, odors, dusts, and gases. I find that the claimant must avoid concentrated exposure to workplace hazards, such as moving machinery and unprotected heights. Finally, I find that the claimant is limited to performing simple, routine, repetitive tasks.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on July 27, 1969 and was 37 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date. (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569a, 416.969, and 416.969a).

11. The claimant has not been under a disability, as defined in the Social Security Act, from May 16, 2007 through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

On February 24, 2010, the Appeals Council denied Plaintiff's request for review of the ALJ's decision, thereby making the determination of the ALJ the final decision of the Commissioner. (Tr. 1-3). Plaintiff then filed this action in the United States District Court on March 18, 2010.

The only issues before this Court are whether correct legal principles were applied and whether the Commissioner's findings of fact are supported by substantial evidence. Richardson v. Perales, 402 U.S. 389 (1971) and Blalock v. Richardson, 483 F.2d 773 (4th Cir. 1972). Under 42 U.S.C. §§ 423(d)(1)(A) and 423(d)(5) pursuant to the Regulations formulated by the Commissioner, Plaintiff has the burden of proving disability, which is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a

continuous period of not less than twelve months...." See 20 C.F.R. § 404.1505(a) and Blalock v. Richardson, supra.

## **MEDICAL EVIDENCE**

On March 6, 2007, Plaintiff was examined at Seneca Family Practice ("SFP") for complaints of hip pain and because she was out of her usual medications. Dennis Reiche, a nurse practitioner, noted that Plaintiff was obese. He encouraged weight loss and tobacco cessation and prescribed medications for her diminished lung capacity, high blood pressure, and lower-leg edema, as well as Tramadol (Ultram) for her chronic hip pain. Tr. 198.

Plaintiff was injured when she fell through an air vent. On May 16, 2007, she sought treatment at the SFP. Mr. Reiche noted that Plaintiff had cuts, bruises, and swelling on her left leg, as well as high blood pressure and obesity. Plaintiff also complained of left hip pain. Tr. 197. X-rays were taken at Oconee Memorial Hospital and revealed "an old internally fixated fracture of the acetabulum"[2] and degenerative arthritic changes of her left knee. Tr. 185-186.

Mr. Reiche examined Plaintiff again on May 18, 24, and 29, 2007. Plaintiff's bruises and swelling were noted to be resolving, but Plaintiff continued to complain of discomfort when walking. Tramadol was prescribed for Plaintiff's hip pain. On May 29, 2007, Plaintiff was noted to appear uncomfortable, walked with an affected gait, complained of pain whenever putting weight on her left hip, and reported numbness on her left side. Mr. Reiche referred Plaintiff to the hospital for scans of her back and left hip. Tr. 195. On May 30, 2007, MRIs of Plaintiff's lumbar spine and left hip revealed disc protrusion consistent with degenerative disc disease and evidence of two past injuries:

---

[2]The acetabulum is "the large cup-shaped cavity on the lateral surface of the os coxae in which the head of the femur articulates..." Dorland's Illustrated Medical Dictionary, 12 (30th ed. 2003).

4

a compression deformity at the L1 vertebra and an acetabular fracture. The plate and screws in the acetabulum limited evaluation of Plaintiff's hip, but the reviewing physician indicated that "[t]here may be some spurring off the femoral head." Tr. 183-184. There are no records of further treatment at the SFP.

On September 25, 2007, Dr. Lary Korn examined Plaintiff at the Commissioner's request. Tr. 200-205. Plaintiff reported that her chief complaints were lower back and left hip pain which increased with lifting or prolonged sitting and standing. She reported that the pain at times was so bad that she became nauseated. Plaintiff also reported difficulty bending at the waist or crouching, and she estimated that she could only stand for about fifteen minutes at a time. Physical examination revealed that Plaintiff preferred to bear weight on the right side, demonstrated a substantial limp on the left side, and she had slow shorter strides in general. Dr. Korn noted that at the hip Plaintiff, with substantial pain displays, had 98 degrees flexion, 48 degrees abduction, 10 degrees adduction, 4 degrees of internal rotation, and 40 degrees of external rotation. At the knees, with pain displays, she flexed to 106 degrees on the right and 112 degrees on the left, and had full extension in both knees. As to her back, Plaintiff had a 50 degree net lumbar flexion, and 28 degrees of net lumbar sacral extension. Her side bend was normal and she indicated no pain with actual loading or spinal rotation. Dr. Korn observed that Plaintiff appeared stressed and fatigued. He attributed much of Plaintiff's stress and tiredness to her reports that her daughter was schizophrenic and had post-traumatic stress disorder.

Dr. Korn diagnosed Plaintiff with severe morbid obesity, status-post left acetabular fracture with likely mild post-traumatic degenerative joint disease, and possible mild degenerative joint disease in her right knee. He indicated that Plaintiff had:

>   obesity and lower extremity injuries [which] limit her ability to do repetitive squatting and crouching on a regular daily basis. She will probably have some increased hip discomfort with the full day on her feet, but I think most of the limitations [] are primarily related to her subjective pain. There were no comments or findings today consistent with any radicular deficits from the L1-L2 disk protrusion. I think the examinee is quite stressed and fatigued today and probably has more than her share of stressors at home on a regular basis due to the mental health situation with her daughter. I feel it complicates a lot of her somatic problems.

Tr. 203.

On October 5, 2007, State agency physician Dr. Frank Ferrell reviewed Plaintiff's medical records and opined that Plaintiff could occasionally lift and/or carry fifty pounds; could frequently lift and/or carry twenty-five pounds; could stand and/or walk about six hours in an eight-hour workday with normal breaks; could sit about six hours in an eight-hour workday; had unlimited ability to push and pull; could occasionally assume several different postures including climbing, stooping, kneeling, crouching, and crawling; could frequently balance; and should avoid concentrated exposure to fumes, odors, dusts, gases, poor ventilation, and hazards. Tr. 206-213. Dr. Dale Van Slooten reviewed Plaintiff's records on December 11, 2007, and concurred with Dr. Ferrell's assessment of her limitations. Tr. 163.

Plaintiff was examined by Dr. George Bruce, an orthopedist, on August 25, 2008. Tr. 220-223. Dr. Bruce reviewed the records from Dr. Korn and the SFP, including Plaintiff's x-rays and MRIs. He noted that Plaintiff was obese and had high blood pressure, difficulty breathing, limited range of motion in her knees, limited range of motion in her back, limited range of motion in her hips, and a notable limp when walking. Dr. Bruce found that Plaintiff had subjective tenderness in the base of both thumbs and grip strength which was less than what would be expected for someone of her age who had been a manual laborer. He thought that Plaintiff had significant depression which added secondary stress to Plaintiff due to her daughter's illness. Dr. Bruce opined that Plaintiff

would be "unable to stand for longer than an hour at a time without having to lie down [and was] unable to walk any distance and unable to carry." Tr. 223.

Plaintiff saw Dr. Dennis Chipman, a forensic psychiatrist, on April 30, 2009. Tr. 225-228. He wrote that she was suffering from chronic depression, cried a great deal, and seemed overwhelmed with the burdens of taking care of her daughter and mother. Dr. Chipman noted that Plaintiff's judgment and insight were good and her immediate recall and memory were intact. Tr. 227. He  diagnosed Plaintiff with a mood disorder and stated that:

> [t]here is chronic pain in the left and right knee and also pain in her lower back. Additionally, the patient suffers from lifelong obesity and now is [] quite morbidly obese. She has not been able to lose weight effectively. However, we do know the problems regarding her orthopedic status are intensified by the mechanical burden associated with her extra weight. She also has become depressed associated with these health problems as well as the burden for caring for her schizophr[en]ic daughter and her mother who is suffering from dementia. She is in a state of constant worry. She is somewhat labile and cries rather easily. She seems to have no help and this also is a bother to her. There are problems with finances and also obtaining medication. We know she would have marked difficulty getting through a workday because of her physical problems and these were addressed rather clearly in the report of Dr. George Bruce, M.D. She would have trouble standing according to this physician and also bending, and there was also chronic fatigue related to insomnia and chronic worry. She would try to get along with co-workers and supervisors. Her problems are of a moderate severity and chronic.

Tr. 228.

## **HEARING TESTIMONY**

At the hearing before the ALJ, Plaintiff related her problems with her knee, back, hip, and hand. She also complained of cold sweats, asthma, dizziness, turning blue around her mouth, and rectal bleeding when lifting things or standing too long. Additionally, Plaintiff said that one of her

7

hands was bigger than the other. See Tr. 33-36. Plaintiff said she had insomnia and was "lucky" if she got four hours sleep a night. Tr. 56-57. Plaintiff estimated that she could walk, stand, or sit for about thirty minutes at a time, and could lift a gallon of milk and possibly up to ten pounds. Tr. 40-41, 50-51. Plaintiff said that depression affected her ability to concentrate and affected her ability to be in public "some." Tr. 41. Plaintiff reported that although she would occasionally get exhausted, she could dress herself, shower, do housework, mow the lawn, drive her mother and daughter places, do laundry, and perform other household activities. While performing housework, Plaintiff did a little, stopped, and then did a little more. Tr. 42-45. Plaintiff also said she spent about half of her day lying down. Tr. 50, 58.

## DISCUSSION

Plaintiff appears to allege that the ALJ's decision is not supported by substantial evidence and that the ALJ: (1) failed to give proper weight to the opinions of Dr. Bruce and Dr. Chipman; (2) failed to properly consider her combination of impairments; and (3) failed to properly evaluate her credibility. The Commissioner contends that the ALJ's decision is supported by substantial evidence and free of legal error.

A.   Substantial Evidence/Opinions of Examining Physicians

Plaintiff alleges that she should have been found disabled based on her orthopedic problems and mental health issues. She argues that the ALJ improperly discounted the opinions of examining physician Dr. Bruce and examining psychiatrist Dr. Chipman. The Commissioner contends that substantial evidence supports the ALJ's finding that Plaintiff had the residual functional capacity ("RFC") to perform a limited range of light work and the ALJ properly discounted the opinions of disability of two of Plaintiff's examining physicians.

> Substantial evidence is:
>
>> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984); Laws v. Celebreeze, 368 F.2d 640, 642 (4th Cir. 1966). It must do more, however, than merely create a suspicion that the fact to be established exists. Cornett v. Califano, 590 F.2d 91, 93 (4th Cir. 1978).

The ALJ's determination that Plaintiff had the RFC to perform a limited range of light work is supported by substantial evidence. None of Plaintiff's treating providers opined that she was disabled or unable to perform a range of light work. In determining Plaintiff's RFC, the ALJ relied on the opinions of several physicians, Plaintiff's medical records, and Plaintiff's testimony. Tr. 20. The medical record indicates that Plaintiff's joint problems were generally mild (Tr. 203); she was able to walk without an assistive device (see Tr. 195, 201); she retained the full range of motion in all areas except her knees, hip, and lower back (Tr. 202, 204, 222); she retained full strength in her arms (Tr. 222); and her asthma was controlled with an inhaler and nebulizer (see Tr. 35-36, 213). If a symptom can be reasonably controlled by medication or treatment, it is not disabling." Gross v. Heckler, 785 F.2d 1163, 1165-6 (4th Cir. 1986).

Plaintiff's MRIs and x-rays support the ALJ's findings because images of her hip and back showed degenerative changes which were generally mild. Imaging of Plaintiff's left hip, other than showing evidence of prior hip surgery and spurring of the left femoral head, indicated no obvious abnormality and no effusion. See Tr. 183-185. X-rays of her left knee showed degenerative arthritic changes. Tr. 186.

9

The ALJ's RFC findings are also supported by the opinions of the state agency physicians. See 20 C.F.R. §§ 404.1527(f)(2) and 416.927(f)(2); SSR 96-6p ("Findings of fact made by State agency ... [physicians ]... regarding the nature and severity of an individual's impairments must be treated as expert opinion of non-examining sources at the [ALJ] and Appeals Council level of administrative review."). The ALJ adopted the postural and environmental limitations imposed by these physicians and was deferential to the Plaintiff in reducing Plaintiff's RFC from medium to a range of light work.

Plaintiff appears to argue that the opinions of disability of Dr. Bruce and Dr. Chapman should be given controlling weight. There is, however, no indication that these providers were treating physicians. The regulations provide that "[r]egardless of its source, we will evaluate every medical opinion we receive." 20 C.F.R. §§ 404.1527(d) and 416.927(d). Generally, more weight is given to the opinions of examining physicians than non-examining physicians. More weight is given to the opinions of treating physicians since they are more likely to be able to provide a detailed, longitudinal picture of a claimant's medical impairment. See 20 C.F.R. §§ 404.1527(d)(2)(I) and 416.927(d)(2)(I).    The ALJ's decision to discount Dr. Bruce's opinion is supported by substantial evidence and correct under controlling law. The ALJ specifically discussed Dr. Bruce's opinion and discounted it because it appeared to be based largely on Plaintiff's subjective complaints, was based on a one-time consultation with Plaintiff, and was not consistent with Plaintiff's extensive physical activities. Tr. 23. Dr. Bruce's opinion differs from than that of Drs. Ferrell, and Van Slooten who reviewed the same medical records, and the opinion of Dr. Korn who physically examined Plaintiff. As noted by the ALJ, Dr. Bruce qualified his opinions with "as she presents" (Tr. 23) indicating that his opinions were largely based on her subjective complaints. Dr. Bruce's physical findings

10

(including that Plaintiff did not use a crutch or a cane and had 5/5 strength in her arms, no atrophy in her hands, normal internal and external rotation of her hips, normal flexion and extension of both knees, 5/5 strength on flexion and extension of both knees, and normal sensation in her lower extremities) do not support his opinion of disability. See Tr. 21-22, 220-223. Dr. Bruce's opinion is also not consistent with Plaintiff's reported activities which included shopping, cooking, housework, and cutting the grass.

The ALJ's decision to discount Dr. Chipman's opinion is also supported by substantial evidence. He specifically discounted Dr. Chipman's opinion as to Plaintiff's physical problems because Dr. Chipman conducted a psychiatric interview, not a physical examination of Plaintiff. Tr. 23. As noted by the ALJ, Dr. Chipman relied on Dr. Bruce's report in making an assessment of Plaintiff's physical limitations. The ALJ did not discount Dr. Chipman's mental limitations entirely, but only to the extent that Dr. Chipman[3] imposed limitations greater than those set out in the RFC (Plaintiff limited to performing simple, routine, repetitive tasks). The ALJ's discounting of Dr. Chipman's opinion is also supported by Dr. Chipman's own observations that Plaintiff's judgment and insight were good and her immediate recall and memory were intact. Plaintiff remembered four of the last five Presidents of the United States, could spell "world" backwards, knew the meaning of "jeopardy," remembered three of three objects at five minutes, and could interpret a simple proverb. Tr. 227. The ALJ's decision concerning Plaintiff's mental capacity is also supported by Plaintiff's

---

[3]As noted by the Commissioner (see Commissioner's Brief at 7-8 and 12), it is unclear whether Dr. Bruce's opinion that Plaintiff could not make it through the workday was based on his opinions concerning Plaintiff's mental impairments or based primarily on his adoption of Dr. Bruce's opinion of Plaintiff's physical limitations.

11

activities that included playing computer games, reading, and taking care of her mother and daughter.

      B.      Combination of Impairments

Plaintiff alleges that the ALJ never addressed the combined effects of her impairments including her joint dysfunctions, disorders of the spine, breathing difficulties, mental health issues, and obesity. She argues that there is not a discussion of her combined impairments and whether or not they equal or exceed a particular listing. The Commissioner contends that the ALJ properly considered all of Plaintiff's combinations in combination and reasonably determined that they did not meet or equal the criteria of any listing in 20 C.F.R Pt. 404, Subpt. P, App. 1.

The ALJ properly considered all of Plaintiff's combinations and their combined effects. He specifically found that Plaintiff's impairments, either singly or in combination, did not meet or medically equal one of the listed impairments. Tr. 17. The ALJ specifically discussed all of Plaintiff's severe and non-severe impairments in the "Findings of Fact and Conclusions of Law" section of his decision. See Browning v. Sullivan, 958 F.2d 817, 821 (8th Cir. 1992)(ALJ sufficiently considered impairments in combination where he separately discussed each impairment, the complaints of pain and daily activities, and made a finding that claimant's impairments did not prevent the performance of past relevant work).

Review of the ALJ's decision reveals that he considered Plaintiff's impairments in combination in considering whether Plaintiff met or equaled one or more of the listings of impairments ("Listings"). In considering whether Plaintiff met or equaled the Listings at § 1.02 (major dysfunction of a joint), he specifically stated he was considering her hip and knee problems. Tr. 17. He specifically considered how obesity contributed to or exacerbated Plaintiff's joint issues.

Tr. 15. Additionally, the ALJ considered the effect of Plaintiff's pain on her mental condition. Tr. 22.

To the extent that Plaintiff argues that the ALJ erred by not providing a separate analysis on the issue of equivalence, her argument fails. The ALJ specifically considered whether Plaintiff had an impairment or combination of impairments that met or equaled a listing. Tr. 17. Plaintiff has presented no evidence to show that she equaled a listing.[4]

The ALJ also considered Plaintiff's limitations from her combination of impairments in the hypothetical to the VE. Specifically, the ALJ asked the VE to consider a claimant of Plaintiff's age, education, and work history who could perform light work with additional limitations of only:

> occasional climbing of ramps and stairs; occasional ladders, ropes, and scaffolds; frequent balancing; occasional stooping, crouching, kneeling, and crawling; avoiding concentrations exposure to irritants such as fumes, odors, dust and gases; avoid concentrated exposure to hazards; work is limited to simple routine and repetitive tasks.

Tr. 60-61. In response, the VE identified a significant number of unskilled light jobs that such a claimant could perform. Tr. 61.

---

[4]"For a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria." Sullivan v. Zebley, 493 U.S. 521, 530 (1990). It is not enough that the impairments have the diagnosis of a listed impairment; the claimant must also have the findings shown in the listing of that impairment. 20 C.F.R. § 404.1525(d); see Bowen v. Yuckert, 482 U.S. 137, 146 and n. 5 (1987)(noting the claimant has the burden of showing that his impairment is presumptively disabling at step three of the sequential evaluation and that the Act requires him to furnish medical evidence regarding his condition). The Commissioner compares the symptoms, signs, and laboratory findings of the impairment, as shown in the medical evidence, with the medical criteria for the listed impairment. Medical equivalence can be found if the impairment(s) is/are at least equal in severity and duration to the criteria of any listed impairment. 20 C.F.R. § 404.1526(a). A claimant has to establish that there was a "twelve-month period...during which all of the criteria in the Listing of Impairments [were] met." DeLorme v. Sullivan, 924 F.2d 841, 847 (9th Cir. 1991)(finding that the claimant's back impairment did not meet the requirements of section 1.05C; remanded on other grounds).

C.    Credibility

Plaintiff alleges that the ALJ failed to properly evaluate her credibility. The Commissioner argues that the ALJ properly weighed Plaintiff's testimony against all the evidence in the record and reasonably determined that her subjective complaints were not fully credible.

In assessing credibility and complaints of pain, the ALJ must: (1) determine whether there is objective evidence of an impairment which could reasonably be expected to produce the pain alleged by a plaintiff and, if such evidence exists, (2) consider a plaintiff's subjective complaints of pain, along with all of the evidence in the record.  See Craig v. Chater, 76 F.3d 585, 591-92 (4th Cir. 1996); Mickles v. Shalala, 29 F.3d 918 (4th Cir. 1994).  Although a claimant's allegations about pain may not be discredited solely because they are not substantiated by objective evidence of the pain itself or its severity, they need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which the impairment can reasonably be expected to cause the pain the claimant alleges he suffers. A claimant's symptoms, including pain, are considered to diminish his or her capacity to work to the extent that alleged functional limitations are reasonably consistent with objective medical and other evidence. 20 C.F.R. §§ 404.1529(c)(4) and 416.929(c)(4).

The ALJ properly considered Plaintiff's credibility by using the two-part test outlined above and considering the medical and non-medical record.  At step one, the ALJ specifically found that Plaintiff had medically determinable impairments that could have reasonably been expected to produce some of the alleged symptoms.  The ALJ then properly considered the medical and non-medical evidence in determining that Plaintiff's subjective complaints were only credible to the extent that they reduced Plaintiff's RFC to a range of light work which was limited to performing

14

simple, routine, repetitive tasks. As discussed above, the medical evidence supports the ALJ's determination.

The ALJ also properly discounted Plaintiff's credibility in part because Dr. Korn's examination indicated that Plaintiff exhibited mixed Waddell's signs.[5] See O'Donnell v. Barnhart, 318 F.3d 811, 818 (8th Cir. 2003)(an ALJ may discount a claimant's allegations if there is evidence that he or she was a malingerer or was exaggerating symptoms for financial gain); Jones v. Callahan, 122 F.3d 1148 (8th Cir.1997)(finding that objective medical evidence of the claimant's physiological impairments, coupled with evidence that the claimant exaggerated the severity of his symptoms, supported the ALJ's finding that the claimant's subjective complaints of back pain were not fully credible).

The ALJ's decision to discount Plaintiff's credibility in part because she sought treatment so rarely is also supported by substantial evidence. The ALJ acknowledged that Plaintiff did not have financial resources for frequent care, but found it unrealistic that with the alleged conditions and symptoms she would not go to a free clinic or emergency room. See Tr. 21. Even when Plaintiff fell through an air vent, the event she claims caused her disability, she did not seek treatment right away as indicated by a provider's note that Plaintiff injured herself the Wednesday prior to her seeking treatment. See Tr. 197. Despite complaints of disabling pain, she testified only to taking aspirin and Tylenol PM to relieve her pain. Tr. 34. See, e.g., Shively v. Heckler, 739 F.2d 987, 990 (4th Cir. 1984) (expressing approval of ALJ's consideration of a plaintiff's lack of strong pain medication); see also 20 C.F.R. § 404.1529(c)(3)(listing "other evidence" to be considered when "determining the

---

[5]Waddell's signs are a group of physical indicators "which...have been used to help clinicians determine whether a patient is malingering or whether chronic pain complaints may be of psychological origin." Korum v. Astrue, 352 Fed. App'x 250, 254 (10th Cir. 2009).

extent to which [claimant's] symptoms limit [claimant's] capacity for work," including, "(iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms[.]").

The ALJ also properly discounted Plaintiff's credibility based on inconsistencies in her statements. See Mickles v. Shalala, 29 F.3d at 930. Plaintiff told Dr. Chipman that she had no friends (Tr. 226), but at the hearing she said she had friends that visit her "once a blue moon" [sic] (Tr. 42). She reported to Dr. Chipman that she occasionally went out to eat (Tr. 227), but testified at the hearing that she never went out to dinner (Tr. 42).

The ALJ's decision to discount Plaintiff's credibility based on her broad array of daily activities is also supported by substantial evidence. Plaintiff testified (with breaks) she was able to cook meals from scratch on a daily basis, do laundry for herself and her daughter, wash dishes, shop, drive a car, mow the lawn, use a computer, and frequently read. She also had a boyfriend at the time of her alleged onset of disability up until January of 2009 (see Tr. 226) and she went out to eat. See Mastro, 270 F.3d at 179 (claimant's daily activities undermined her subjective complaints).

## CONCLUSION

Despite Plaintiff's claims, she fails to show that the Commissioner's decision was not based on substantial evidence. This Court may not reverse a decision simply because a plaintiff has produced some evidence which might contradict the Commissioner's decision or because, if the decision was considered de novo, a different result might be reached.

This Court is charged with reviewing the case only to determine whether the findings of the Commissioner were based on substantial evidence, Richardson v. Perales, supra. Even where a plaintiff can produce conflicting evidence which might have resulted in a contrary decision, the

Commissioner's findings must be affirmed if substantial evidence supported the decision, <u>Blalock v. Richardson</u>, <u>supra</u>. The Commissioner is charged with resolving conflicts in the evidence, and this Court cannot reverse that decision merely because the evidence would permit a different conclusion. <u>Shively v. Heckler</u>, <u>supra</u>. It is, therefore,

    RECOMMENDED that the Commissioner's decision be **affirmed**.

                                              Joseph R. McCrorey
                                              United States Magistrate Judge

May 27, 2011
Columbia, South Carolina